*Preliminary Examination*

AO 432 (Rev. 2/84)

Administrative Office of the United States Courts

## WITNESS AND EXHIBIT RECORD

| DATE | CASE NUMBER | OPERATOR | PAGE NUMBER |
|---|---|---|---|
| 1/15/08 | 08-08-M | Golden | 1 |

| NAME OF WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | PRESIDING OFFICIAL |
|---|---|---|---|---|---|
| Task Force Officer David Rosenbloom | 9:40 am | 9:51 am | — | — | Stark |

| EXHIBIT NUMBER | DESCRIPTION | ID | ADMITTED IN EVIDENCE |
|---|---|---|---|
| 1 | Affidavit to Criminal Complaint | 1 | yes |


GOVERNMENT EXHIBIT 1

## AFFIDAVIT OF PATRICK FYOCK

1. Your affiant is Patrick Fyock. Your affiant has been a Special Agent for over five and a half years with the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). During that time, my duties have included the investigation of federal and state firearms offenses. Prior to being hired by ATF, I was employed as a Police Officer for seven years with the Nationally Accredited New Castle County Police Department in Delaware. During the course of your affiant's law enforcement career, your affiant has received law enforcement training on the investigation of firearms offenses on numerous occasions, including but not limited to classes at the ATF Academy, New Castle County Police Academy, and the Federal Law Enforcement Training Center and including classes on Firearms identification classes, Firearms Nomenclature classes, and Firearms identification classes. During the course of your affiant's law enforcement career, your affiant has participated in over 80 seizures of firearms and well over 120 investigations of firearms offenses, as well as numerous conversations about the facts and circumstances of firearms offenses with the investigating officers of those firearms offenses. Your affiant has also received training on drug investigations and drug trafficking characteristics during my time as a New Castle County Police Officer, including but not limited to a DEA 40 hour drug investigator class. Your affiant has participated in approximately 6-8 drug investigations resulting in drug seizures and convictions since joining ATF. You affiant has contact with DEA agents, state and local drug investigators on a regular basis and possesses a working knowledge of the drug trends for this area.

2. Unless otherwise stated, the information in this affidavit is based upon your affiant's personal knowledge and conversations with Wilmington Police Officers.

3. The seizure of all of the below listed evidence occurred on 01/10/08, in the City of Wilmington, State and District of Delaware, as stated to me by a Wilmington Police Officers with personal knowledge of the seizure of the below items or who learned the information from Wilmington Police Officers with personal knowledge of the seizure of the below items.

4. Your affiant reviewed the computer criminal history information for the Defendant Ryan Evans from the Delaware Justice Information System (DELJIS) and the National Crime Information Center (NCIC) and learned that the defendant has a prior felony conviction for Conspiracy Second Degree, in the Superior Court of the State of Delaware, a felony crime punishable by imprisonment for a term exceeding one year. Your affiant also reviewed a Judgment in a Criminal Case from the United States District Court for the District of Delaware and learned the defendant has a prior felony conviction for Possession of a Firearm by a Prohibited Person, a felony crime punishable by imprisonment for a term exceeding one year

5. A Wilmington Police Officer with personal knowledge of the events stated to your affiant

that members of the Wilmington police department were executing a search and seizure warrant at a location in the city of Wilmington. This Wilmington Police Officer advised your affiant that he was advised by a combination of Wilmington Police Officers with personal knowledge of the events of the following. As officers from Crisis Management Tactical Team (CMTT) were making entry into the front of the residence, at least 3 officers stationed in the rear of the residence advised they heard a window open from the second floor and then heard a "thud" that the officers described as a metallic sounding item hitting the ground. Officers went to where the thud was heard and located a Walther P99 semi-automatic 9mm firearm, Serial #043798. The firearm was loaded with 15 R-P 9mm Lugar rounds. Simultaneous to the officers hearing and locating the firearm hitting the ground, members from Wilmington Police CMTT made entry and responded to the second floor where the suspect Ryan Evans was located. The room he was located in was toward the rear of the residence. Also, the window was found open and the officer described a hole in the screen large enough for a firearm to fit through.

6. The Wilmington Officer who advised your affiant of the information in paragraph 5 also told your affiant that he learned the following information from a combination of Wilmington Police Officers with personal knowledge of the events. A search pursuant to the search warrant yielded multiple items of interest of evidentiary value. Discovered in the bedroom that Evans was located in was a dresser. In one of the dresser drawers, officers located 4.5 bundles (approximately 59 bags) of a powder like substance. ( The Wilmington Officer who advised your affiant of the information in paragraph 5 field tested the substance with positive results for heroin.)The packaging was a combination with yellow bags without a logo and bags containing a "black Magic" logo. Located in the same drawer next to the heroin was a Delaware Identification card issued to the subject Ryan Evans. Also located in the bedroom was $1453.00 which was scattered throughout the room. The bulk of the currency (approximately $1000.00) was found between the mattresses and box spring, the remainder of the currency was discovered concealed in coat pockets, and other areas in the room.

7. The Wilmington Officer who advised your affiant of the information in paragraph 5 also advised your affiant that he searched the basement of that residence and discovered 2 bundles of heroin ( approximately 16 bags) concealed in a men's jacket pocket in the basement of the residence. ( The Wilmington Officer who advised your affiant of the information in paragraph 5 field tested the substance with positive results for heroin.)The total amount of heroin recovered was 85 bags, 2.55 grams. The officers further reported that they discovered packaging material (i.e. plastic bags and other materials) which the officers advised they recognized as common materials used to package illegal drugs for sale.

8. The Wilmington Officer who advised your affiant of the information in paragraph 5 also advised your affiant that Evans was issued his Miranda warning by the Wilmington Officer who advised your affiant of the information in paragraph 5, in the presence of a second officer and that Evans initially waived his rights. That officer asked if there was any drugs, guns, or money in the house. Evans who was handcuffed and standing near the

bed lifted the mattress and exposed the currency found. The officer then asked "what type of gun he through out of the window" to which Evans replied "a nine millimeter.

9. The Wilmington Officer who advised your affiant of the information in paragraph 5 also advised your affiant that the only other occupant located in the residence was a sickly, elderly female who was identified as Evan's aunt. The female was located in a separate bedroom on the second floor. This officer advised that the aunt was attached to medical apparatus and appeared too sickly to maneuver from room to room. The aunt advised that Evans is the lone occupant of the room he was discovered in.

10. The Wilmington Officer who advised your affiant of the information in paragraph 5 also advised your affiant that Evans along with the contraband was transported to Wilmington Police Headquarters' where the heroin was field tested with positive results by the Wilmington Officer who advised your affiant of the information in paragraph 5.

11. From my training and experience, and prior discussion with an ATF Agent who is expertly trained and experienced in determining the interstate nexus of firearms, your affiant knows that the Walther P99 semi-automatic 9mm Serial #043798 is a firearm as defined in 18 U.S.C., Chapter 44, Section 921(a)(3) and was manufactured in a state other than Delaware such that its possession in Delaware would have necessarily required that the firearm had crossed state lines prior to its possession in Delaware and such that the possession of that firearm in Delaware affected interstate commerce.

12. From my training and experience, I know that the seized heroin was consistent with possession with the intent to distribute heroin based on the individual packaging method and the amount of heroin.

Wherefore, based upon your affiant's training and experience, your affiant believes that there is probable cause to believe that the defendant violated:(1) 18 U.S.C. 922(g)(1) and 924(a)(2), by possessing in and affecting interstate commerce a firearm, after having previously been convicted of a felony crime punishable by imprisonment for a term exceeding one year, and (2) 21 U.S.C. 841(a)(1) and (b)(1)(C), by Possessing with Intent to Distribute a Controlled Substance, Heroin, and respectfully requests that the Court issue a Criminal Complaint charging those offenses.

_____
Patrick W. Fyock
Special Agent, ATF

Sworn to and subscribed in my presence
this _10th_ day of _January_ 2008

_____
Honorable Leonard P. Stark
United States Magistrate Judge
District of Delaware