IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. No. 08-07-SLR |
| | ) |
| RYAN EVANS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

**I. BACKGROUND**

Defendant Ryan Evans moves to suppress statements made on January 10, 2008, subsequent to a search of a residence which led to defendant's being placed in custody. (D.I. 13) Defendant contends that he was not properly advised of his Miranda[1] rights prior to making the statements. Further, defendant argues that, in the event the court finds that he was advised of his Miranda rights, defendant did not make a knowing, intelligent, and voluntary waiver of his Miranda rights before making statements to police. (Id. at ¶ 5, D.I. 22 at 1) An evidentiary hearing was held on April 30, 2008.[2] Post-hearing briefing is complete. (D.I. 21, 22, 23) The court has

---

[1] It is well-settled that the government may not present statements in its case-in-chief collected during custodial interrogation by law officers unless defendant has been advised of, and validly waived, his "Miranda" rights: (1) to remain silent and that any statements can be used as evidence against him; and (2) to the presence of retained or appointed counsel during questioning. See Miranda v. Arizona, 384 U.S. 436, 444 (1966).

[2] Detective Randolph Pfaff ("Detective Pfaff") of the Wilmington Police Department Drug Unit testified for plaintiff. Detective Pfaff was an eleven year veteran of the Wilmington Police Department and had served in the Drug Unit for seven years

jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion to suppress is denied.

## II. FINDINGS OF FACT

Pursuant to Fed. R. Crim. P. 12(d), the following constitutes the court's essential findings of fact as developed during the evidentiary hearing. (D.I. 20)

1. On January 10, 2008, the Wilmington Police Department Drug Unit executed a search warrant on 428 South Jackson Street in Wilmington, Delaware. (Id. at 4) The Wilmington Police Special Weapons and Tactics (SWAT) team was called to assist in securing the residence and executing the search. This determination was made for safety purposes, based on the fact that defendant was known to have "an extensive criminal history, consisting of gun charges, violent crimes and previous drug arrests."[3] (Id. at 5) As the SWAT team secured the residence, Detective Pfaff positioned himself with several other officers in the front of the house. At the same time, Detective Charles Emory ("Detective Emory"), Officer Cramer, and other members of the Drug Unit occupied positions to the rear of the residence. (Id. at 6) Within a matter of minutes, the SWAT team secured the residence. The SWAT team advised Detective Pfaff and Detective Emory that two individuals, Mr. Ryan Evans and his aunt, Mrs.

---

at the time of the incident. (D.I. 20 at 3) Officer Donald Cramer ("Officer Cramer") of the Wilmington Police Department Drug Unit was called by defendant and testified.

[3]Prior to arriving at the scene of the search, defendant was identified as the target of the search. Detective Pfaff reviewed defendant's Delaware Justice Information System ("DELJIS") printout and was aware that defendant had previously been arrested over forty times on state charges. (D.I. 20 at 13-4; GX1)

Millicent Evans, had been found in separate bedrooms on the second floor of the residence. (Id. at 5)

2. At some point, while the SWAT team was securing the residence, the officers positioned along the rear of the residence observed a window being opened. (Id. at 33) Officer Cramer then heard what sounded like a metallic object strike the ground. (Id.) Prior to entering the residence, Detective Pfaff was informed by Detective Cunningham about the observations of the officers positioned behind the residence. (Id. at 8) A search for the "metallic object" was underway, but the object had yet to be recovered at the time Detective Pfaff entered the residence.

3. Detective Pfaff and Detective Emory entered the residence, with Detective Pfaff responding to the bedroom occupied by defendant and Detective Emory responding to the bedroom occupied by Mrs. Millicent Evans. (Id. at 5) Detective Pfaff entered the bedroom occupied by the defendant; he found defendant alone, sitting on a bed, already in handcuffs.[4] (Id. at 8, 18) Detective Pfaff's attention was drawn to the lone, rear-facing, window as he observed it to be "up approximately three inches." (Id. at 8) He also noticed that "the screen part behind the glass window had a huge hole in it." (Id.)

4. Immediately upon observing the condition of the window, Detective Pfaff recited the following Miranda warnings to defendant:

> Mr. Evans, you have the right to remain silent. Anything you say can and will be used against you in a court of law. You

---

[4]The fact that defendant was in custody is not contested. To detain defendant, the SWAT team was required to use force to enter the bedroom where defendant was located. (D.I. 20 at 7)

3

> have the right to an attorney. If you cannot afford to hire an attorney, one will be appointed to represent you. You may have one present during questioning, and you may stop answering questions any time you wish.

(Id. at 9) Detective Pfaff read defendant his Miranda warnings at this point because he "believed it to be a firearm that was thrown out the window, and [he] wanted to talk to him about it." (Id.) Detective Pfaff then asked defendant if he understood his rights. Defendant gave a head shake in the affirmative, at which point Detective Pfaff said, "I need a yes or a no." Defendant responded verbally in the affirmative. (Id. at 10) Detective Pfaff did not have defendant sign a waiver of Miranda rights form, and did not specifically ask defendant if he was waiving his Miranda rights. (Id. at 22) Nor did Detective Pfaff ask defendant if he understood each individual right within the Miranda warnings. (Id.) Instead, Detective Pfaff took defendant's affirmative response to whether defendant understood his rights as a waiver of his Miranda rights. Detective Pfaff then proceeded to question defendant.

    5. Detective Pfaff asked defendant a series of questions. Detective Pfaff asked defendant if there were any drugs in the house, to which defendant responded no. (Id.) Detective Pfaff then asked if there were any large sums of money in the house and, again, defendant answered no. (Id.) Detective Pfaff again asked if there were any drugs or money in the house. This time defendant did not verbally respond but instead pulled up a portion of the bed mat he was sitting on revealing a large sum of money he stated totaled approximately $1,000. (Id. at 11) Defendant made no statement regarding any drugs. (Id. at 23)

6. Shortly after the money was revealed, Detective Pfaff was informed that a firearm was recovered in the rear alleyway. (Id. at 25)  Unaware of the type of firearm recovered, Detective Pfaff asked defendant "what kind of gun it was that he threw out the window." (D.I. 20 at 11)  Defendant answered that it was a "9 millimeter." (Id.)  Defendant then looked at Detective Pfaff and said he "didn't think he should answer any more questions, and that he should have a lawyer." (Id.)  At this juncture, Detective Pfaff ceased questioning defendant.  Officer Cramer, who had entered the upstairs bedroom, heard Detective's Pfaff's question followed by defendant's response, and also heard defendant's statement invoking his Miranda rights.  This, according to Officer Cramer, resulted in Detective Pfaff's concluding his questioning of defendant. (Id. at 27, 38-40)

## III. STANDARD OF REVIEW

The Fifth Amendment of the United States Constitution guarantees that, in a criminal proceeding, no person will be forced to be a witness against himself.  To this end, the United States Supreme Court created the Miranda warnings for law enforcement to follow prior to custodial interrogation of a suspect.  Miranda v. Arizona, 384 U.S. 436 (1966).  Specifically, before any questioning, the suspect must be informed that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. at 445.  These "warnings are constitutionally required to combat the compelling pressures inherent in custodial police interrogation and to permit a full opportunity to exercise the privilege against self-incrimination" guaranteed by the Fifth Amendment.  Dickerson v. United States, 530 U.S. 428, 440 (2000).

Statements obtained in violation of Miranda precepts, even though the statements may be voluntary, are inadmissible to prove guilt at trial. See Michigan v. Mosely, 423 U.S. 96, 100 (1975); Miranda at 458-59.

It is the government's burden to prove, by a preponderance of the evidence, that a defendant was properly advised of his Miranda rights; that the defendant voluntarily, knowingly, and intelligently waived said rights; and that the ensuing statement was voluntarily made. United States v. Durham, 741 F.Supp. 498, 504 (D.Del.1990) (citing Colorado v. Connelly, 479 U.S. 157, 169 (1986)). Two factors must be considered to determine whether a waiver was voluntary, knowing and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran v. Burbine, 475 U.S. 412, 421 (1986).

The totality of the circumstances surrounding the questioning must be examined to determine the sufficiency of Miranda warnings and any waiver of rights. See United States v. Velasquez, 885 F.2d 1076, 1086 (3d Cir. 1989); North Carolina v. Butler, 441 U.S. 369 (1979). In analyzing the totality of the circumstances, a court "must look at the facts of the particular case, including the background, experiences, and conduct of the suspect." Velasquez, 885 F.2d at 1086. Potential circumstances affecting the voluntariness of the statements include: 1) evidence of police coercion; 2) the length and location of the interrogation; 3) the defendant's maturity, physical condition, mental health and level of education; 4) whether Miranda warnings were given; and 5) whether

an attorney was present for the interview. United States v. Swint, 15 F.3d 286, 289 (3d Cir. 1994); See Also United States ex rel. Hayward v. Johnson, 508 F.2d 322, 326 (3d Cir. 1975)("we must satisfy ourselves that the confession was the product of a free and unconstrained choice by its maker"); Connelly, 479 U.S. at 164 (a confession is involuntary if is the product of overreaching police conduct).  The court is charged with reviewing the "credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." United States v. McKneely, 6 F.3d 1447, 1453 (10th Cir. 1993); Government of the Virgin Islands v. Gereau, 502 F.2d 914, 921 (3d Cir. 1974).

### IV. CONCLUSIONS OF LAW

1. Defendant argues that the statements he made to Detective Pfaff are inadmissible because "the interrogating officer neither asked if [he] understood each of his Miranda rights [individually], nor obtained his express or implied waiver or consent to questioning to ensure that he understood the nature of the rights being abandoned and the consequences of any decision to abandon them." (D.I. 22 at 6)  As a result, defendant claims he did not make a voluntary, knowing, and intelligent waiver of his Miranda rights prior to making incriminating statements in response to Detective Pfaff's questions.

2. Plaintiff, while not contesting that Miranda warnings were required, argues that the testimony before the court demonstrates that defendant was properly advised of his Miranda rights and understood the consequences of waiving those rights.  Plaintiff further contends that the statements defendant made following the waiver, therefore, were voluntary, knowing, and intelligent

3. A valid Miranda waiver may be made orally or may be implied based on the defendant's conduct.[5] See Butler, 441, U.S. 369, 373 (1979).[6] Specifically the Supreme Court has stated that while "an express written or oral statement of a waiver, is strong proof as to the validity of a waiver, it is not necessary or sufficient to establish a waiver." Butler, 441, U.S. 369, 373 (1979). The Third Circuit has consistently followed this precedent. See United States v. Cruz, 910 F.2d 1072, 1080 (3d Cir. 1990); United States v. Velasquez, 626 F.2d 314 (3d Cir. 1980)[7]. Verbal statements by a suspect acknowledging an understanding of his Miranda rights followed by the suspect's answering questions can qualify as an implicit waiver of protections, thus satisfying the constitutional safeguards established in Miranda.

4. Considering the totality of the circumstances at bar, the court finds that Detective Pfaff properly administered Miranda warnings to defendant and that defendant made a voluntary, knowing, and intelligent waiver of his Miranda rights. Detective Pfaff's recitation of defendant's Miranda protections was thorough and defendant responded affirmatively when asked if he understood his rights. At the time of the search and

---

[5]"[I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler, 441, U.S. 369, 373 (1979).

[6]In Butler, the Supreme Court found that a suspect had effectively waived his rights when, after being verbally advised of his rights and having read them, the suspect indicated he would speak to police and answer questions despite refusing to sign a waiver of Miranda rights form.

[7]In Velasquez, the Third Circuit found that a suspect had implicitly waived her rights where, after being read her Miranda rights, she stated that she understood her rights and proceeded to give statements to authorities. No waiver of Miranda rights form was signed and the suspect was never asked if she was waiving her Miranda rights.

arrest, Detective Pfaff was well aware of defendant's significant past involvement with the criminal justice system and, partially based on this information, believed defendant's verbal affirmations of understanding were sufficient waivers of Miranda protections. This made it unnecessary for Detective Pfaff to ask whether defendant specifically understood each right encompassed in the Miranda warnings. Through testimony, it has been shown that, prior to the date in question, defendant was arrested on a different matter and also verbally indicated that he understood his Miranda protections after being read his Miranda warnings. (D.I. 20 at 15-16; GX 2) Additionally, during the interrogation, defendant invoked his right to counsel immediately after answering Detective Pfaff's question regarding the gun. This further establishes that defendant was aware of his rights throughout the questioning, and could have invoked his rights prior to Detective Pfaff's asking him a single question or at any point during the interrogation. Finally, other circumstances surrounding the interrogation, such as the length and location of the interrogation, the number of interrogators, and the maturity, mental health and education of the defendant, fail to cast doubt on the voluntariness of defendant's waiver and subsequent statements.[8]

5. Although the presence of a clearly worded and executed waiver form or an express verbal waiver would render this issue moot, the absence of such a form or

---

[8] The interrogation lasted only a few minutes and was comprised of four questions. (D.I. 20 at 10) Defendant, while handcuffed, was sitting on a bed at the time of the interrogation. Only Detective Pfaff was present during the interrogation, so the intimidating presence of multiple officers was not at play. Defendant was 25 or 26 years old and spoke English. (Id.) Also, defendant has not argued, and nothing in the record indicates, that he suffered from any mental illness or was under the influence of drugs or alcohol at the time of the interrogation.

express verbal waiver does not void the waiver of Miranda rights herein. The court credits Detective Pfaff's testimony as credible and as an accurate reflection of defendant's understanding and waiver of Miranda protections. In so doing, the court notes that defendant has presented neither evidence nor testimony to cast doubt on the testimony of the detective. Accordingly, the court finds that the defendant made a voluntary, knowing, and intelligent implicit waiver of his Miranda protections when he stated he understood his rights and proceeded to answer questions. The statements following the waiver were voluntarily, knowingly, and intelligently made, thus rendering them admissible.

## V. CONCLUSION

At Wilmington this 29th day of July, 2008,

IT IS ORDERED that:

1. Defendant's motion to suppress statements is denied (D.I. 13)

2. A telephonic status conference is scheduled for **Tuesday, August 12, 2008** at **4:45 p.m.**, with the court initiating said call.

3. The time between this order and **August 12, 2008** shall be excluded under the Speedy Trial Act in the interest of justice. 18 U.S.C. § 3161(h)(8)(A)

United States District Judge